**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:20-cv-01023 |
| | ) | Judge Trauger |
| THE METROPOLITAN GOVERNMENT OF | ) | **Lead Case** |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DR. LILY MORENO LEFFLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:21-cv-00038 |
| | ) | Judge Trauger |
| METROPOLITAN GOVERNMENT OF | ) | Member Case |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DR. JAMES BAILEY, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 3:21-cv-00122 |
| | ) | Judge Trauger |
| THE METROPOLITAN GOVERNMENT OF | ) | Member Case |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

2

**MEMORANDUM**

Before the court is the Motion to Dismiss (Doc. No. 41) filed by defendants the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and Dr. Adrienne Battle in the case of *Dr. Lily Moreno Leffler v. Metropolitan Government*, No. 3:21-cv-00038, seeking dismissal of the claim asserted against them under 42 U.S.C. § 1983 in the Leffler's Third Amended Complaint ("Complaint") (Doc. No. 36).[1] For the reasons set forth herein, the motion will be granted, and the § 1983 claim will be dismissed. This ruling does not affect the plaintiff's other legal claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As relevant to her § 1983 claim, the plaintiff makes the following allegations in the Complaint, which are accepted as true for purposes of the defendants' Motion to Dismiss.

### A. The Parties

Metro is a governmental entity operating a public school system, the Metropolitan Nashville Public Schools ("MNPS"), in Nashville, Davidson County, Tennessee. Defendant Dr. Adrienne Battle is the Director of Schools for MNPS.

Plaintiff Lily Leffler is a certificated teacher, with an Ed.D. in Leadership and Professional Practice. She was first hired by MNPS as a teacher in 1994 and worked in various teaching positions for MNPS through 2001. She worked in the Williamson County School System from 2002 through 2016. In 2016, she returned to MNPS to serve as Executive Director of middle and high schools. For the 2017–2018 and 2018–2019 school years, she served as an Executive Director

---

[1] After the defendants filed their Motion to Dismiss, the *Leffler* case was consolidated for all purposes with two other related cases, as indicated by the case caption above. The references to the parties' filings and the docket numbers herein are from the docket in *Leffler*, No. 3:21-cv-00038, and the reference to "plaintiff" means Lily Leffler.

for the Northeast section for elementary schools. For the 2019–2020 school year, she served as the Executive Director of the Southeast elementary schools. Leffler competently performed her job as Executive Director. Importantly, she does not allege that she had tenure during her most recent round of employment with MNPS.

### B. Adverse Employment Action Against Leffler

In March 2020, Battle was appointed Director of Schools for MNPS. At the time, MNPS had thirteen Executive Directors, including Leffler. On April 29, 2020, MNPS's Chief of Human Resources told all thirteen Executive Directors, including Leffler, that their jobs as Executive Directors were being eliminated due to "the budget and a reorganization" but that they could apply for other open positions. (Doc. No. 36 ¶ 16.) On May 4, 2020, Battle, as Director of Schools, sent Leffler a letter ("Notice Letter") confirming that her job as Executive Director would be eliminated effective June 30, 2020. (*See* Doc. No. 13-1.) The Notice Letter stated in relevant part:

> This letter confirms the conversation on April 29, 2020 that due to a district reorganization and budget impacts your position . . . will be eliminated effective June 30, 2020. You are eligible for rehire into any other position with the district for which you apply and are selected.
>
> . . . . If you have not secured another position prior to June 30, you will be separated from employment . . . .

(*Id.*; *see also* Doc. No. 36 ¶ 18.)

Leffler does not state when she received the Notice Letter, but she does not dispute receiving it. She nonetheless claims that the defendants "never told [her] that MNPS was not renewing her contract." (Doc. No. 36 ¶ 18(a).) She asserts that her "firing" was "not due to Defendants' nonrenewing Plaintiff's contract." (*Id.* ¶ 18(b).) She asserts that, when MNPS "non-renews" a teacher's contract, it sends a form letter that states: "[T]his letter constitutes official notification under Tennessee Code Annotated 49-2-301(b)(1)(EE) your employment will be non-renewed for the 20__–20__ school year." (*Id.* ¶ 18(c).) The Notice Letter the plaintiff received did

not follow this format. (*Id.* ¶ 18(d).)

Leffler also alleges that the defendants' stated reason for firing her—the elimination of her position due to the budget and a reorganization—was a "sham." (*Id.* ¶ 18(e).) Leffler's position was not actually eliminated. Instead, MNPS kept the thirteen Executive Director positions and added two additional Executive Director positions. MNPS told Leffler that she could interview for the position of Executive Director, which she did. Interviews for the position were supposed to conclude on May 27, 2020. However, MNPS interviewed two additional candidates for the positions after that date, both of whom were ultimately hired. (*See id.* ¶¶ 24, 25.) MNPS hired fifteen individuals into the open Executive Director positions, including nine of the original Executive Directors. Two of the original Executive Directors retired, and only the plaintiff was "fired."[2] (*Id.* ¶ 18.) Shawn Lawrence, who had previously been employed as a principal in the plaintiff's district, was promoted to the plaintiff's position.

### C. The Sham Reduction in Force

Leffler asserts that MNPS went through a "reduction in force and eliminated positions," but that a "high percentage of the positions eliminated" were held by individuals who had engaged in protected activity or whose jobs were eliminated for improper purposes. (*Id.* ¶ 32; *see also id.* ¶¶ 34–35, 37–38.) Leffler claims that the "reduction in positions was a subterfuge to fire/demote these individuals" and that the positions were eliminated, not for budget reasons as claimed, but for "improper purposes." (*Id.* ¶¶ 32, 33.) Leffler alleges that the defendants "used the excuse of the elimination of positions due to the budget to engage in a wholesale elimination of employees who had engaged in protected activity. The alleged reduction in force was a sham to rid MNPS of

---

[2] The Complaint does not indicate what happened to the thirteenth original Executive Director.

these individuals." (*Id.* ¶ 39.)

### D. The Legal Claims and Partial Motion to Dismiss

Based on these and other allegations, Leffler brings claims against Metro for age discrimination, in violation of the Tennessee Human Rights Act ("THRA") and the Age Discrimination in Employment Act; for associational retaliation and discrimination in violation of the THRA and Title VII of the Civil Rights Act of 1964; and for violations of the Tennessee Teacher Tenure Act, Tenn. Code Ann. § 49-5-511(a) & (b). As relevant here, the plaintiff also sues both Metro and Dr. Adrienne Battle under 42 U.S.C. § 1983 for violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution by firing her in a "sham reduction in force to deprive her of her due process rights under Tenn. Code Ann. § 49-5-511(a)." (Doc. No. 36 ¶ 52(f).)

The defendants filed their Motion to Dismiss and supporting Memorandum of Law (Doc. Nos. 41, 42), seeking dismissal of the plaintiff's § 1983 claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff has filed a Response in opposition (Doc. No. 43), and the defendants have filed a Reply (Doc. No. 46).

## II. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the

claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## III. DISCUSSION

The defendants seek dismissal of the plaintiff's due process claim under § 1983 on the grounds that Leffler, as a non-tenured employee, did not have a protected property interest in her continued employment or in her specific position as Executive Director. The defendants argue in the alternative that the plaintiff's allegations are insufficient to establish a "sham" reduction in

force and that, in any event, Battle in entitled to qualified immunity.

In her Response, Leffler expressly states that she does not claim to have a property interest in her specific position. She does claim to have a protected property interest in continuing employment with MNPS, in support of which she argues that: (1) she alleges in the Complaint that her contract was *not* non-renewed under the Continuing Contract Law, Tenn. Code Ann. § 49-5-409, and, therefore, that she had a legitimate expectation of, and property interest in, continued employment (Doc. No. 43, at 7); and (2) she was deprived of that interest when she was terminated in violation of Tenn. Code Ann. § 49-5-511, which applies to both tenured and non-tenured teachers and provides the procedure for dismissals for cause and those resulting from a reduction in force. She claims her right to due process was violated when the defendant engaged in a sham reduction in force under § 49-5-511(b) in order to avoid the procedural requirements set out in § 49-5-511(a).

### A.    The Existence of a Protected Property Interest

In general, "[f]or a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)). Courts assessing such a claim apply a two-part analysis: "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment." *Id.* at 762–73 (quoting *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)). And second, assuming the plaintiff succeeds in identifying such a right, the court considers "whether the deprivation of that interest contravened notions of due process." *Id.* at 763.

The plaintiff here does not claim to have a protected liberty interest; she claims a protected property right to continued employment with MNPS. "To establish a protected property interest in

a government service, a plaintiff must show a 'legitimate claim of entitlement' to that service; an 'abstract need or desire' or a 'unilateral expectation' is insufficient." *Id.* (quoting *Roth*, 408 U.S. at 577). Property interests typically "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

Under Tennessee law, a teacher has two potential means of acquiring a protected property interest in her employment. The first is through achieving tenure under the Tennessee Teacher Tenure Act. *See, e.g., Finney v. Franklin Spec. Sch. Dist. Bd. of Educ.*, 576 S.W.3d 663, 682 (Tenn. Ct. App. 2018) ("Tenured teachers possess 'a constitutionally protected property interest in continued employment,' and the state cannot deprive them of this right without procedural due process." (quoting *Thompson v. Memphis City Schools Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012)). Second, the existence of an employment contract creates a property interest in not being terminated for the duration of the contract. *See Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir. 2002) (finding that a school principal's year-long employment contract created a protected property interest that was violated when the principal was terminated mid-year, prior to the expiration of the contract term).[3]

However, the existence of state-created *procedure*, *per se*, does not give rise to a property interest in those procedures. *See Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) ("This Court has held that processes mandated by municipal ordinances or state law are insufficient to establish a property interest." (citations omitted)). That is because "[t]he categories

___

[3] The court also found, however, that no procedural protections attached to the plaintiff's right not to be terminated under that contract except for cause, aside from those provided by his ability to bring suit for breach of contract. *Sharp*, 285 F.3d at 488–89 (citing *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273–74 (6th Cir. 1988)).

of substance and procedure are distinct. . . . 'Property' cannot be defined by the procedures provided for its deprivation . . . ." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 641 (1985). The Supreme Court has also "long recognized that a mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (internal quotation marks and citation omitted).

**B.      Leffler Did Not Have a Protected Property Interest**

Under the Teacher Tenure Act, "a teacher is either tenured or not tenured." *Barbee v. Union City Bd. of Educ.*, 559 F. App'x 450, 453 (6th Cir. 2014). As the Sixth Circuit has recognized,

> A tenured teacher may be dismissed, suspended, or have his contract non-renewed only with cause and after having been given notice, a hearing, and an opportunity for judicial review. By contrast, a non-tenured teacher can be dismissed, suspended, or have his contract non-renewed without cause and without the requirement of notice, a hearing, or an opportunity for judicial review.

*Id.* (citing *Johnston–Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990)). There is no dispute in this case that Leffler, at the time of her termination, did not have tenure under the Teacher Tenure Act. She does not argue otherwise.

She does, however, contend that she had a protected property interest created by contract, apparently based on the defendants' failure to strictly comply with the Continuing Contract Law, Tenn. Code Ann. § 49-5-409, which is the statute governing the procedure for the non-renewal of non-tenured teachers' contracts. However, in that regard, there is also no dispute that Leffler received verbal notice on April 29, 2020 and written notice on or around May 4, 2020 that "her job as Executive Director was being eliminated effective June 30, 2020" (Doc. No. 36 ¶ 17)—that is, that her contract for the position Executive Director would not be renewed after it terminated on June 30, 2020. Leffler does not allege that her employment was terminated in the middle of a contract term. Rather, her contract expired, and she was not offered another contract. In other words, Leffler cannot point to either tenure status or a contract as creating a protected property

interest in her employment with MNPS. As a result, her due process claim fails at the first prong: she has not established that she possessed a property right protected by the Fourteenth Amendment. *Midkiff*, 409 F.3d at 762–63.

The arguments the plaintiff raises to avoid this conclusion are simply beside the point. She asserts that she had a right to continued employment under Tenn. Code Ann. § 49-5-409, simply because her contract was not officially "non-renewed." More specifically, she claims that the notice of termination did not satisfy the statute because its language did not mirror that of form non-renewals.[4] However, nothing in § 49-5-409 requires special language to give notice of the non-renewal of a contract. And, even if it did, a "mere error of state law" does not give rise to a due process violation. *Swarthout*, 562 U.S. at 222. That is, a failure to strictly comply with the statute would not obviate the fact that there was no contract in place to create a protected property interest.

Moreover, the plaintiff has not actually alleged facts that, if true, would establish a violation of Tenn. Code Ann. § 45-5-409. The current version of this statute—and the version in effect at the time of the plaintiff's termination—states in relevant part:

> (a) Teachers in service and under the control of the public elementary or high schools of this state may continue in such service unless written notice is sent to the teacher from the teacher's board of education or director of schools, as appropriate, of the teacher's dismissal or failure of reelection.
>
> (b) The notice must be sent within five (5) business days following the last instructional day for the school year to be applicable to the next succeeding school year . . . .
>
> (e) As used in this section, "last instructional day" means the last day of the school

---

[4] She references Tenn. Code Ann. § 49-2-301(b)(1)(EE), but that provision pertains to the dismissal of nontenured, licensed employees "for incompetence, inefficiency, insubordination, improper conduct or neglect of duty." *Id.* § 49-2-301(b)(1)(EE)(i). There is no indication in the Complaint that the plaintiff was terminated for cause, nor was her contract terminated mid-term.

year on which students are required to report to school."

Tenn. Code Ann. § 49-5-409.

As set forth above, the plaintiff alleges in the Complaint that she received written notice in early May that her position was being terminated and that, although she could apply for other open positions, her employment would be terminated if she was not selected for another position. (*See* Doc. No. 36 ¶¶ 17–18.) Based on the allegations in the Complaint as well as the wording of the Notice Letter itself (Doc. No. 13-1), the court finds that the defendants unambiguously notified the plaintiff that her contract was not being renewed.[5] The mere fact that the plaintiff asserts in the Complaint, in an entirely conclusory fashion, that "Defendants never told Plaintiff that MNPS was not renewing her contract" (Doc. No. 36 ¶ 18(a)) is flatly refuted both by the wording of the Notice Letter and by the allegations in the Complaint. There is simply no dispute that the plaintiff's contract was not renewed and that she had adequate notice of the non-renewal.

The plaintiff also cites various Tennessee cases that stand for the propositions that (1) a teacher's employment contract creates a protected property right, such that the "mid-term termination of the contract must be accompanied by due process" (Doc. No. 43, at 7 (quoting *Kendall v. Bd. of Educ.*, 627 F.2d 1, 4 (6th Cir. Tenn. 1980)); and (2) a school board's failure to give "timely notice of a decision to non-renew entitles the teacher to an additional year of employment under the Continuing Contract Law" (*id.* (quoting *Mosby v. Fayette Cty. Bd. of Educ.*, No. W2019-01851-COA-R3-CV, 2020 WL 4354905, at *4 (Tenn. App. July 29, 2020))). But these cases do not come to the plaintiff's aid. *Mosby* involved the timeliness of the notice of non-renewal

---

[5] The letter is referenced in the Complaint, and the defendants filed a copy of it with their Motion to Dismiss the original Complaint and incorporate it by reference in their present Motion to Dismiss. Because the letter was "referred to in the Complaint" and is "central to the claims contained therein," *Brent*, 901 F.3d at 694, the court may consider it without converting the defendants' motion into a motion for summary judgment.

under Tenn. Code Ann. § 49-5-409. Although the Complaint does not indicate when the "last instructional day" took place in the Spring of 2020, Tenn. Code Ann. § 49-5-409(e), the plaintiff does not claim that the notice was untimely. *Kendall* involved the termination of a contract mid-term, but Leffler's contract was not terminated mid-term. Instead, it expired and was not renewed.

The plaintiff also complains that she was not afforded the protection provided by Tenn. Code Ann. § 49-5-511(a), which establishes the procedure for the dismissal for cause or suspension of all teachers, both tenured and non-tenured, or those provided by § 49-5-511(b), which sets forth the procedure for teacher terminations resulting from a reduction in force. Irrespective of whether the plaintiff's termination was in violation of state law, these statutes do not create property rights. *See Chandler*, 296 F. App'x 463, 469 (6th Cir. 2008) ("[P]rocesses mandated by municipal ordinances or state law are insufficient to establish a property interest." (citations omitted)). Consequently, their violation would not give rise to a due process claim.

In sum, Leffler cannot escape the fact that, as a non-tenured teacher who worked through the expiration of her contract term, she does not have a protected property interest upon which to premise her due process claim. The defendants are entitled to dismissal of the § 1983 claim, and the court has no need to reach Battle's separate qualified immunity argument.

## IV.    CONCLUSION

For the reasons set forth herein, the defendants' Motion to Dismiss Leffler's § 1983 claim against them will be granted. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge