```
                                                              Page
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                    NASHVILLE DIVISION

 3 -------------------------------------------------
   JANE DOE,                         )
 4                                   )
              Plaintiff,             )
 5                                   )
   VS.                               )  No. 3:20-CV-01023
 6                                   )  Jury Demand
   THE METROPOLITAN GOVERNMENT       )  Judge Trauger
 7 OF NASHVILLE AND DAVIDSON         )  Magistrate Judge
   COUNTY, TENNESSEE, AND            )  Holmes
 8 DR. ADRIENNE BATTLE,              )  Lead Case
                                     )
 9            Defendant.             )
   ------------------------------)
10 DR. LILY MORENO LEFFLER,          )
                                     )
11            Plaintiff,             )
                                     )
12 VS.                               )
                                     )
13 THE METROPOLITAN GOVERNMENT       )
   OF NASHVILLE AND DAVIDSON         )
14 COUNTY, TENNESSEE, AND            )
   DR. ADRIENNE BATTLE,              )
15                                   )
              Defendants.            )
16 ------------------------------)
   DR. JAMES BAILEY,                 )
17 DR. PIPPA MERIWETHER and          )
   DR. DAMON CATHEY,                 )
18                                   )
              Plaintiffs,            )
19                                   )
   VS.                               )
20                                   )
   METROPOLITAN GOVERNMENT OF        )
21 NASHVILLE AND DAVIDSON            )
   COUNTY, TENNESSEE and             )
22 DR. ADRIENNE BATTLE,              )
                                     )
23            Defendants.            )
   -------------------------------------------------
24              DEPOSITION OF ANTHONY HALL
                   Taken on April 11, 2022
25
```

## Page 2

```
PREPARED BY:

CRISTI G. WATSON, LCR
Briggs & Associates
222 Second Avenue North, Suite 340M
Nashville, Tennessee  37201
Cristicr@bellsouth.net
615-424-0999
```

## Page 3

```
                A P P E A R A N C E S

FOR PLAINTIFFS BAILEY, LEFFLER,
MERIWETHER, DOE:
   Ann Buntin Steiner
   Attorney at Law
   Steiner & Steiner, LLC
   613 Woodland Street
   Nashville, Tennessee 37204
   Asteiner@steinerandsteiner.com

FOR PLAINTIFF CATHEY:
   Jesse Ford Harbison
   Attorney at Law
   Jesse Harbison Law, PLLC
   P.O. Box 68251
   Nashville, Tennessee 37206
   jesse@jesseharbisonlaw.com

FOR THE DEFENDANTS:
   J. Brooks Fox
   Attorney at Law
   Metropolitan Courthouse, Suite 108
   P.O. 196300
   Nashville, Tennessee 37219
   brooks.fox@nashville.gov

                    I N D E X
Examination by Ms. Steiner                5

                   E X H I B I T S
No exhibits were marked.
```

## Page 4

S T I P U L A T I O N S

The deposition of ANTHONY HALL was taken on the 11th day of April, 2022, by notice, on behalf of the plaintiff, via Zoom, beginning at approximately 2:00 p.m. for all purposes allowed under the Tennessee Rules of Civil Procedure.

It is agreed that Cristi G. Watson, LCR, may swear the witness, take the deposition by stenographic means and afterwards reduce same to typewritten form.

All formalities as to notice, caption, certificate, and signing, et cetera, of the deposition are waived. All objections, except as to the form of the questions, are reserved to the hearing of said matter.

(Unless previously provided, all proper names are spelled phonetically to the best of the court reporter's ability.)

## Page 5

ANTHONY HALL,
having been duly sworn, testified as follows:
                    EXAMINATION
BY MS. STEINER:

Q. Mr. Hall, I am Ann Steiner. I am here to take your deposition today. I represent two parties who have sued Metro government for retaliation. That would be (name redacted), who we will call Jane Doe throughout the lawsuit, Dr. Pippa Meriwether; Dr. James Bailey; Dr. Lily Leffler; and then Jesse Harbison is here who represents Dr. Damon Cathey. Okay?

A. Okay.

Q. Mr. Hall, could you state your full name for the record?

A. My name is Anthony Lee Hall.

Q. Where are you employed?

A. Metro Nashville Public Schools.

Q. What is your position there?

A. Coordinator for Office Of Restorative Practices.

Q. Do you know my client, Jane Doe?

A. Correct.

Q. How long have you known her?

A. A few years.

Q. Do you know any of the other plaintiffs,

### Page 6

1 Dr. Pippa Meriwether, Dr. James Bailey, Dr. Lily
2 Leffler, Dr. Damon Cathey?
3      A.     Yes, I know Dr. Meriwether, Dr. Cathey.
4 I know Dr. Bailey.
5      Q.     At Restorative Practices what do you do?
6      A.     Primarily our role is to train staff on
7 nonpunitive proactive strategy to support students and
8 their families as well as the staff.
9      Q.     Do you step in if there is a problem with
10 someone's job performance?
11      A.     Say that again.
12      Q.     Does your department step in if there is
13 a problem with job performance?
14      A.     If there is -- not a job performance, no.
15 We will step in if there is a conflict between -- if
16 we're asked to maybe do a restorative support, there
17 are two staff members who might have a conflict, but
18 not necessarily their performance, just about their
19 individual personalities.
20      Q.     If someone has trouble getting along with
21 others and it needs to be brought to your attention,
22 your department will step in to try to correct it,
23 correct?
24      A.     We will try to support the best way we
25 know how.

### Page 7

1      Q.     Do the other supervisors at Metro have a
2 job duty for reporting to you if there is an issue with
3 someone getting along with others?
4      A.     Ask that again.  You broke up.
5      Q.     Do the supervisors have a job duty for
6 reporting to you or to your department that there is an
7 issue if one of the employees has a problem dealing
8 with others?
9      A.     I can't speak to if that's a job duty.  I
10 am not sure what principal job duties are executive
11 directors.  Say if it is brought to our attention and
12 it's something that we can support, both staff members,
13 then we will do that.
14      Q.     Does that extend to if there is an issue
15 with an executive director getting along with others;
16 is that brought to your attention?
17      A.     I never had one at that level.  Most
18 things I have experienced has been pretty much either
19 parent and teacher or parent and administrator.  I
20 never had to deal with anything on the executive
21 director level.
22      Q.     But you could if you were asked to,
23 correct?
24      A.     I would think that I could.  I would like
25 to believe in my confidence I could.

### Page 8

1      Q.     Did anyone bring to your attention that
2 Dr. Lily Leffler was having trouble getting along with
3 anybody?
4      A.     No.  I am not that very familiar with
5 her, no.
6      Q.     Did you know that Jane Doe applied for a
7 position as a restorative practices specialist?
8      A.     Correct.
9      Q.     That's different than a restorative
10 practices -- what is it?  Is it associate or assistant?
11      A.     Assistant, yes.
12      Q.     What type educational requirements do you
13 need to be a restorative practices specialist?
14      A.     We require that a person has a degree in
15 related fields or they also may have a degree in maybe
16 another field but they have work experience related to
17 social justice, equity education maybe.
18      Q.     Is that like equity, diversity, and
19 inclusion type area?
20      A.     It can.
21      Q.     Did you think Jane Doe had that type
22 experience, I think it's called EDI?
23      A.     I can't recall exactly.  I know she was
24 eligible for an interview, so I would think she had
25 some experience in that area.

### Page 9

1      Q.     Did you meet her?  Do you recall meeting
2 with Jane Doe about the job?
3      A.     I spoke with her in interview process,
4 correct.
5      Q.     Did you speak with her outside Metro
6 schools?
7      A.     I spoke with her and asked her just
8 basically here is kind of what the salary range is,
9 here is the responsibilities, do you think this is
10 something you would like to do, so, yes.
11      Q.     Did you meet with her outside away from
12 Metro schools?
13      A.     Yeah.  We had a conversation at the YMCA.
14      Q.     Did you recommend -- did you want to hire
15 Jane Doe as a restorative practice specialist?
16      A.     Initially she did have the scores that
17 were required; she did have the scores that she would
18 be eligible for hire.
19      Q.     When you hire someone or recommend that
20 you want to hire somebody, do you send it to HR?
21      A.     Yes, it goes to HR.
22      Q.     Did you send a request to HR to be
23 allowed to hire Jane Doe?
24      A.     Yes.
25      Q.     When you said she had the scores, what

Page 10

1 are you talking about?
2     A.    Just meant that based on the interview
3 process that we felt that she answered the questions
4 well and that she was certainly a candidate for hire.
5     Q.    Who is we?  Did someone other than you or
6 along with you interview her?
7     A.    Just my initial team.  The others are
8 restorative practice specialists.
9     Q.    Who would that be?
10    A.    That would be Renee Malbrough, Lamar
11 Moore, Melissa Gordon.
12    Q.    Did all four of you interview Jane Doe?
13    A.    If I remember correctly, I believe all
14 four of us did.
15    Q.    Was it like a group decision to try to
16 hire her into the position?
17    A.    Yes.
18    Q.    What was the salary range?  Do you
19 recall?
20    A.    Her salary range was outside of the
21 parameters I had for my budget.  I can't remember.  I
22 want to say with her experience and her education and
23 everything, I want to say it exceeded like 80,000, but
24 I am not a hundred percent certain.  That's been a
25 couple of years ago.

Page 11

1     Q.    It exceeded 80,000?
2     A.    If I remember correctly.  I know that it
3 was definitely out of line in comparison with the other
4 staff members that I had.
5     Q.    What's the range for the other staff
6 members?
7     A.    About 62,000.
8     Q.    What's the range?  What does it go from?
9     A.    I want to say it goes -- I don't have
10 that in front of me, so I am not a hundred percent
11 certain but maybe 55 to 62.
12    Q.    Do you know what her position was when
13 she applied for that job?
14    A.    I think she was a school teacher at John
15 Trotwood Moore at that time.
16    Q.    Do you know what the range was for that?
17    A.    No idea.
18    Q.    So how do you know -- when you said she
19 exceeded it by 80,000, did you mean she was up at
20 135,000?
21    A.    No.  I am saying the salary that I
22 believe with her experience that came back was around
23 80,000, not in addition to her salary but around
24 80,000.
25    Q.    Did you tell her -- I think you said you

Page 12

1 told her what the salary range for that job was?
2     A.    I don't recall.  It's been a while ago.
3 I am pretty sure that I probably said to her that your
4 salary is beyond what my budget allows, but I can't
5 swear to it.
6     Q.    My issue is this.  I thought you said a
7 second ago that when you interviewed with her you told
8 her what the salary range for that job was?
9     A.    I don't recall saying that.
10    Q.    When you interview for this job, does the
11 application show what the salary is?
12    A.    That's a HR question.  I don't think so,
13 but I am not a hundred percent certain.  That would be
14 HR.  I typically leave that to HR.
15    Q.    Now, so when you interviewed her, you
16 really weren't so much concerned about salary; you were
17 more concerned about her qualifications, correct?
18    A.    Yes.
19    Q.    Then who did you actually hire into that
20 position?
21    A.    Let's see.  I hired Jekia Allen.
22    Q.    Ms. Allen -- what is she paid?
23    A.    She is around the 62 range.  I don't know
24 exact.  She has been here a few years.  I don't know
25 her exact salary.

Page 13

1     Q.    So what happened was your group
2 interviewed Ms. Doe, and you said she was the one you
3 wanted to hire, correct?
4     A.    No, I said that she certainly fit the
5 criteria.
6     Q.    You sent it to HR for approval, correct?
7     A.    Yes, that was the next step.
8     Q.    If HR had approved it, you would have
9 hired her, correct?
10    A.    If they could have gotten the salary
11 respectable.  I would think that she was definitely a
12 very, very high candidate.
13    Q.    What was the salary range you would have
14 approved her with?
15    A.    Sixty-two thousand.
16    Q.    Anything higher?
17    A.    No.  I don't have any authority beyond
18 that.
19    Q.    Does HR have the authority beyond that?
20    A.    I can't answer that.  That is an HR call.
21    Q.    So then when you sent it to HR, who at HR
22 handled it?
23    A.    I am not sure, because it's a platform
24 called Taleo, so I go on there and if there are
25 candidates that bubble up, I can then select them as

Page 14

```
 1  the next phase.  I don't recall if there was a specific
 2  individual that that goes to.  I just use the platform
 3  we have.
 4       Q.   Did you talk to anyone in HR?
 5       A.   Just sent e-mails.  I sent e-mails to our
 6  HR manager, Angela Johnson, to ask like tell me a
 7  little bit about where I am in my parameters with this.
 8       Q.   What did she tell you?
 9       A.   We didn't really get anything because she
10  was in and out, and then she eventually resigned the
11  position.
12       Q.   When you say she was in and out, what do
13  you mean?
14       A.   I never really could get ahold of her.  I
15  don't know what her deal was.  I don't know if she was
16  on vacation, medical, or whatever, but I e-mailed her
17  multiple times and called her on our teams channel and
18  didn't really get anything from her.
19       Q.   Did you finally hear from anyone at HR?
20       A.   I can't remember who it was or it just
21  came back, but when they shared the salary range, and
22  that might have come from Ms. Johnson, but I wouldn't
23  swear to it, when HR sent back the salary range, I knew
24  at that time that went beyond what we were able to pay
25  out of our budget.
```

Page 15

```
 1       Q.   Did anyone from HR tell you that Ms.
 2  Johnson had been told by Lisa Spencer she could not
 3  hire Jane Doe because Jane Doe had a lawsuit against
 4  the district?
 5       A.   No.  No one told me that.
 6       Q.   Did you know anything about Ms. Johnson
 7  left Metro schools because she thought Metro schools
 8  was trying to get her to do something unethical?
 9       A.   No idea.
10       Q.   So it was HR that told you that the
11  salary was outside the range, correct?
12       A.   Right.
13       Q.   Did they tell you how far outside?
14       A.   I don't recall that, no.  Like I said, I
15  know that it was up around high seventies, eighties,
16  and that exceeded what my budget allowed for.
17       Q.   Who told you that, though?
18       A.   When you go on the platform, I don't
19  recall if that was an individual person.  That's been a
20  while ago.  I don't remember if it was Ms. Johnson or
21  that bounced back from Taleo platform.  I am not a
22  hundred percent certain.  Could have been either one.
23       Q.   What's the step for restorative practices
24  specialist?
25       A.   Say that part again.
```

Page 16

```
 1       Q.   Step number for the salary schedule for
 2  restorative practices specialist?
 3       A.   I don't know.  I don't know what the
 4  steps are.
 5       Q.   Were you aware that the steps would go
 6  from somewhere like $34 an hour up to $51 an hour?
 7       A.   No, I was not.
 8       Q.   Let me show you something.  Can you see
 9  this support pay scale I have here?
10       A.   Can you enlarge it a tad bit, please.
11       Q.   How is that?
12       A.   Better, thank you.
13       Q.   Are you familiar with this?
14       A.   A little bit.  Not a lot.
15       Q.   Is this the pay schedule for restorative
16  practices specialist?
17       A.   I cannot say.  I don't see restorative
18  practices on there anywhere.  I don't know if it is or
19  not.
20       Q.   Sixty-two thousand a year is somewhere
21  around $30 an hour, correct?
22       A.   That sounds right.
23       Q.   Who told you that you were limited to $30
24  an hour for that position?
25       A.   I'll say again I don't recall if it was
```

Page 17

```
 1  Ms. Johnson or that was a response from the Taleo
 2  platform around what the salary range was.  I really
 3  don't get into salary a whole, whole lot.  I leave that
 4  up to HR because I --
 5       Q.   Mr. Hall, how did you know that --
 6            MR. FOX:  Objection.  The witness wasn't
 7  finished with his answer I don't believe.  Were you?
 8            THE WITNESS:  No.  I am just saying my
 9  answer hasn't changed.  I can't change anything other
10  than I don't recall 100 percent whether or not that
11  came from Ms. Johnson or that was something I received
12  from the Taleo platform.  That's been a while ago.
13  BY MS. STEINER:
14       Q.   Mr. Hall, please, listen to my question.
15  That wasn't the intent of my question.  My question is
16  a little different.  Why was there a limit of this
17  about $30 an hour on that job?  Did you put that limit
18  there, or did somebody else say you can't pay over $30
19  an hour for this job?
20       A.   I did not put any dollar amounts.  That's
21  an HR call.
22       Q.   Then when you sent all that information
23  to HR about the job and wanted to hire Jane Doe, HR
24  told you it was too much for your budget, correct?
25       A.   That is what I recall.
```

Page 18

1  Q.  Has anyone questioned you at all before
2 today about what happened with you hiring or not hiring
3 Jane Doe in that position?
4  A.  No.
5  Q.  What was the department that you were in?
6  A.  That I was in or the department I am in
7 now?
8  Q.  Has it changed?
9  A.  No.  I just wasn't sure if you asked me
10 the department that I was in or that I am currently in.
11  Q.  You were and are currently in restorative
12 practices, correct?
13  A.  Yes, ma'am.
14  Q.  Your job hasn't changed since 2020,
15 correct?
16  A.  That is correct.
17  Q.  On the budget, where do you fall?  What
18 is your number, do you know, the function number or
19 department number?
20  A.  I actually do not have my pay stub in
21 front of me.
22  Q.  Are you in charge of your department?
23  A.  Yes, for the four staff -- five staff
24 that report to me.
25  Q.  Who do you report to?

Page 19

1  A.  Ms. Kyla Krengel.
2  Q.  What is her position?
3  A.  Director of SEL.
4  Q.  What is SEL?
5  A.  Social Emotional Learning.
6  Q.  Are you in the same department as Ms.
7 Krengel?
8  A.  Yes.
9  Q.  Gotcha.  So in terms of the budget for
10 your department, that would be something Ms. Krengel
11 would handle, correct?
12  A.  Yes, Ms. Krengel and HR.
13  Q.  You don't prepare the budget, correct?
14  A.  Correct.
15  Q.  Now, did you hear anyone -- are you in
16 the central office?
17  A.  Yes, I am.
18  Q.  Did you hear any discussion in central
19 office about that How to Make a Slave lesson that was
20 taught at Waverly Belmont?
21  A.  Not at central office, no.
22  Q.  Did you hear about it any other place?
23  A.  I am not a hundred percent certain, but I
24 want to say it was something that was on the news.
25  Q.  Did you know that that lesson plan was

Page 20

1 taught to Jane Doe's son and that she complained about
2 it?
3  A.  No, I did not.
4  Q.  Did you have any idea why the director of
5 School Choice was eliminated?
6  A.  No idea.
7      MS. STEINER:  Mr. Hall, thank you, very
8 much.  That's all I have.
9      MS. HARBISON:  I don't have any
10 questions.
11      MR. FOX:  None from me, thank you.
12      (DEPOSITION CONCLUDED.)

Page 21

1     REPORTER'S CERTIFICATE
2 STATE OF TENNESSEE )
3 COUNTY OF DAVIDSON )
4      I, Cristi G. Watson, Licensed Court Reporter in and
5 for the State of Tennessee, do hereby certify that the
6 foregoing proceedings were stenographically reported by me on
7 the 11th day of April, 2022, and that the foregoing transcript
8 constitutes a true and accurate record to the best of my
9 ability.
10      I further certify that I am not related to nor an
11 employee of counsel or any of the parties to the action, nor
12 am I in any way financially interested in the outcome of this
13 case.
14      I further certify that I am duly licensed by the
15 Tennessee Board of Court Reporting as a Licensed Court
16 Reporter as evidenced by the LCR number following my name
17 below.
18      IN WITNESS WHEREOF, I have hereunto set my official
19 hand on this 26th day of April, 2022.

22    CRISTI G. WATSON
23    Tennessee License No. 187

JANE DOE vs METROPOLITAN GOVERNMENT, ET AL
HALL, ANTHONY on 04/11/2022                                                                                                                    Index: $30..duty

## $

**$30** 16:21,23 17:17,18
**$34** 16:6
**$51** 16:6

## 1

**100** 17:10
**135,000** 11:20

## 2

**2020** 18:14

## 5

**55** 11:11

## 6

**62** 11:11 12:23
**62,000** 11:7

## 8

**80,000** 10:23 11:1,19,23,24

## A

**addition** 11:23
**administrator** 7:19
**ahold** 14:14
**Allen** 12:21,22
**allowed** 9:23
**amounts** 17:20
**Angela** 14:6
**Ann** 5:5
**Anthony** 5:1,15
**application** 12:11
**applied** 8:6 11:13
**approval** 13:6
**approved** 13:8,14
**area** 8:19,25
**assistant** 8:10,11
**associate** 8:10
**attention** 6:21 7:11,16 8:1
**authority** 13:17,19
**aware** 16:5

## B

**back** 11:22 14:21,23 15:21
**Bailey** 5:10 6:1,4
**based** 10:2
**basically** 9:8
**Belmont** 19:20
**bit** 14:7 16:10,14
**bounced** 15:21
**bring** 8:1
**broke** 7:4
**brought** 6:21 7:11,16
**bubble** 13:25
**budget** 10:21 14:25 17:24 18:17 19:9, 13
**budget allowed** 15:16
**budget allows** 12:4

## C

**call** 5:8 13:20 17:21
**called** 8:22 13:24 14:17
**candidate** 10:4 13:12
**candidates** 13:25
**Cathey** 5:11 6:2,3
**central** 19:16,18,21
**change** 17:9
**changed** 17:9 18:8,14
**channel** 14:17
**charge** 18:22
**Choice** 20:5
**client** 5:21
**comparison** 11:3
**complained** 20:1
**concerned** 12:16,17
**CONCLUDED** 20:12
**confidence** 7:25
**conflict** 6:15,17
**conversation** 9:13
**Coordinator** 5:19
**correct** 5:22 6:22,23 7:23 8:8 9:4 12:17 13:3,6,9 15:11 16:21 17:24 18:12,15,16 19:11,13,14
**correctly** 10:13 11:2
**couple** 10:25
**criteria** 13:5

## D

**Damon** 5:11 6:2
**deal** 7:20 14:15
**dealing** 7:7
**decision** 10:15
**degree** 8:14,15
**department** 6:12,22 7:6 18:5,6,10, 19,22 19:6,10
**deposition** 5:6 20:12
**director** 7:15,21 19:3 20:4
**directors** 7:11
**discussion** 19:18
**district** 15:4
**diversity** 8:18
**Doe** 5:8,21 8:6,21 9:2,15,23 10:12 13:2 15:3 17:23 18:3
**Doe's** 20:1
**dollar** 17:20
**duly** 5:2
**duties** 7:10
**duty** 7:2,5,9

Briggs & Associates 615/482-0037
Nashville, Tennessee

Case 3:20-cv-01023   Document 149-5   Filed 07/27/22   Page 7 of 10 PageID #: 2652

### E

e-mailed  14:16
e-mails  14:5
EDI  8:22
education  8:17 10:22
educational  8:12
eighties  15:15
eligible  8:24 9:18
eliminated  20:5
Emotional  19:5
employed  5:16
employees  7:7
enlarge  16:10
equity  8:17,18
eventually  14:10
exact  12:24,25
EXAMINATION  5:3
exceeded  10:23 11:1,19 15:16
executive  7:10,15,20
experience  8:16,22,25 10:22 11:22
experienced  7:18
extend  7:14

### F

fall  18:17
familiar  8:4 16:13
families  6:8
felt  10:3
field  8:16
fields  8:15
finally  14:19
finished  17:7
fit  13:4
FOX  17:6 20:11
front  11:10 18:21

full  5:13
function  18:18

### G

Gordon  10:11
Gotcha  19:9
government  5:7
group  10:15 13:1

### H

Hall  5:1,5,13,15 17:5,14 20:7
handle  19:11
handled  13:22
happened  13:1 18:2
Harbison  5:10 20:9
hear  14:19 19:15,18,22
high  13:12 15:15
higher  13:16
hire  9:14,18,19,20,23 10:4,16 12:19 13:3 15:3 17:23
hired  12:21 13:9
hiring  18:2
hour  16:6,21,24 17:17,19
HR  9:20,21,22 12:12,14 13:6,8,19,20, 21 14:4,6,19,23 15:1,10 17:4,21,23 19:12
hundred  10:24 11:10 12:13 15:22 19:23

### I

idea  11:17 15:9 20:4,6
inclusion  8:19
individual  6:19 14:2 15:19
information  17:22
initial  10:7
Initially  9:16
intent  17:15
interview  8:24 9:3 10:2,6,12 12:10

interviewed  12:7,15 13:2
issue  7:2,7,14 12:6

### J

James  5:10 6:1
Jane  5:8,21 8:6,21 9:2,15,23 10:12 15:3 17:23 18:3 20:1
Jekia  12:21
Jesse  5:10
job  6:10,13,14 7:2,5,9,10 9:2 11:13 12:1,8,10 17:17,19,23 18:14
John  11:14
Johnson  14:6,22 15:2,6,20 17:1,11
justice  8:17

### K

kind  9:8
knew  14:23
Krengel  19:1,7,10,12
Kyla  19:1

### L

Lamar  10:10
lawsuit  5:9 15:3
Learning  19:5
leave  12:14 17:3
Lee  5:15
Leffler  5:10 6:2 8:2
left  15:7
lesson  19:19,25
level  7:17,21
Lily  5:10 6:1 8:2
limit  17:16,17
limited  16:23
Lisa  15:2
listen  17:14
long  5:23

JANE DOE vs METROPOLITAN GOVERNMENT, ET AL
HALL, ANTHONY on 04/11/2022                                                                                                Index: lot..Slave

lot  16:14 17:3

## M

Make  19:19
Malbrough  10:10
manager  14:6
meant  10:2
medical  14:16
meet  9:1,11
meeting  9:1
Melissa  10:11
members  6:17 7:12 11:4,6
Meriwether  5:9 6:1,3
Metro  5:7,17 7:1 9:5,12 15:7
Moore  10:11 11:15
multiple  14:17

## N

Nashville  5:17
necessarily  6:18
news  19:24
nonpunitive  6:7
number  16:1 18:18,19

## O

Objection  17:6
office  5:19 19:16,19,21

## P

paid  12:22
parameters  10:21 14:7
parent  7:19
part  15:25
parties  5:6
pay  14:24 16:9,15 17:18 18:20
percent  10:24 11:10 12:13 15:22 17:10 19:23

performance  6:10,13,14,18
person  8:14 15:19
personalities  6:19
phase  14:1
Pippa  5:9 6:1
place  19:22
plaintiffs  5:25
plan  19:25
platform  13:23 14:2 15:18,21 17:2,12
position  5:18 8:7 10:16 11:12 12:20 14:11 16:24 18:3 19:2
practice  9:15 10:8
practices  5:20 6:5 8:7,10,13 15:23 16:2,16,18 18:12
prepare  19:13
pretty  7:18 12:3
Primarily  6:6
principal  7:10
proactive  6:7
problem  6:9,13 7:7
process  9:3 10:3
Public  5:17
put  17:17,20

## Q

qualifications  12:17
question  12:12 17:14,15
questioned  18:1
questions  10:3 20:10

## R

range  9:8 10:18,20 11:5,8,16 12:1,8,23 13:13 14:21,23 15:11 17:2
recall  8:23 9:1 10:19 12:2,9 14:1 15:14,19 16:25 17:10,25
received  17:11
recommend  9:14,19
record  5:14

redacted  5:8
related  8:15,16
remember  10:13,21 11:2 14:20 15:20
Renee  10:10
report  18:24,25
reporting  7:2,6
represent  5:6
represents  5:11
request  9:22
require  8:14
required  9:17
requirements  8:12
resigned  14:10
respectable  13:11
response  17:1
responsibilities  9:9
restorative  5:19 6:5,16 8:7,9,13 9:15 10:8 15:23 16:2,15,17 18:11
retaliation  5:7
role  6:6

## S

salary  9:8 10:18,20 11:21,23 12:1,4,8,11,16,25 13:10,13 14:21,23 15:11 16:1 17:2,3
scale  16:9
schedule  16:1,15
school  11:14 20:5
schools  5:17 9:6,12 15:7
scores  9:16,17,25
SEL  19:3,4
select  13:25
send  9:20,22
seventies  15:15
shared  14:21
show  12:11 16:8
Sixty-two  13:15 16:20
Slave  19:19

Briggs & Associates 615/482-0037
Nashville, Tennessee

Case 3:20-cv-01023   Document 149-5   Filed 07/27/22   Page 9 of 10 PageID #: 2654

**social**  8:17 19:5
**someone's**  6:10
**son**  20:1
**sounds**  16:22
**speak**  7:9 9:5
**specialist**  8:7,13 9:15 15:24 16:2,16
**specialists**  10:8
**specific**  14:1
**Spencer**  15:2
**spoke**  9:3,7
**staff**  6:6,8,17 7:12 11:4,5 18:23
**state**  5:13
**Steiner**  5:4,5 17:13 20:7
**step**  6:9,12,15,22 13:7 15:23 16:1
**steps**  16:4,5
**strategy**  6:7
**stub**  18:20
**students**  6:7
**sued**  5:7
**supervisors**  7:1,5
**support**  6:7,16,24 7:12 16:9
**swear**  12:5 14:23
**sworn**  5:2

**T**

**tad**  16:10
**Taleo**  13:24 15:21 17:1,12
**talk**  14:4
**talking**  10:1
**taught**  19:20 20:1
**teacher**  7:19 11:14
**team**  10:7
**teams**  14:17
**terms**  19:9
**testified**  5:2
**things**  7:18

**thought**  12:6 15:7
**thousand**  13:15 16:20
**time**  11:15 14:24
**times**  14:17
**today**  5:6 18:2
**told**  12:1,7 15:2,5,10,17 16:23 17:24
**train**  6:6
**Trotwood**  11:15
**trouble**  6:20 8:2
**type**  8:12,19,21
**typically**  12:14

**U**

**unethical**  15:8

**V**

**vacation**  14:16

**W**

**wanted**  13:3 17:23
**Waverly**  19:20
**work**  8:16

**Y**

**year**  16:20
**years**  5:24 10:25 12:24
**YMCA**  9:13